May it please the Court, I am Lisa Pickering, attorney for the petitioner, Mr. Maher Kutkut. I request to reserve two minutes of my time. This case is about defining exceptional circumstances to the one-year filing deadline for asylum. Why have you – so you have only argued it as an extraordinary circumstances case, not as a changed circumstances case? Yes, we argued it as an exceptional circumstances case. Why, given Taslimi? I don't understand that. Taslimi is a changed circumstances case. It's the one that you rely on. Yes. So just – We feel that his shame in what the doctor described as an internal homophobia and failure to accept his own homosexuality rose to the level of exceptional circumstance rather than a changed circumstance because he had testified that he did start having feelings at a younger age and had acted on them at a younger age. I would also say that this case is similar to cases involving trauma or post-traumatic stress, that Mr. Kutkut's own fear about what he is and own inability to recognize who he is delayed his filing of the asylum case. So I would say that that was different than a changed circumstance. Well, his fear wasn't new. He acknowledged he feared returning years ago. He did acknowledge that he feared returning, but at that point he was still in status. He was on the student visa. He had an immigrant petition. Did his fear go away? It did not go away, but he – Then what was the change? He was working so hard against himself to acknowledge what he was. He might at a very basic level say, I don't want to go home, but what he – but until he could get to the point where he could say, I am gay and I cannot go home, I'm scared to go home, until he could say that to someone else. Whether he could say to himself whether or not he was gay, I'm not sure that's the right question. The question, if we're talking here about asylum and fear, is how others would perceive him. And though he may have struggled with his own identity, I'm not sure the fact that he struggled with it speaks at all to the question as to how he would be perceived by others or what risk he would face if he went back to his home country. He said he feared going back to his home country years ago. I don't see how that ever changed. I think it was more of an abstract fear as opposed to this will actually happen to me. And when he was actually in a position where he had no options left. Well, is the change in your view his acknowledging to himself that he was a homosexual, is that the change? Because he didn't come out so far as his family was concerned. He didn't come out to anyone other than himself, but that was his change. But he never got to the change was coming out to himself as a homosexual, admitting to himself that he was a homosexual. What effect did that have on how others perceived him? What effect did that have on the risk that he faced going back? That I think would be similar to the religious conversion cases, that once you acknowledge something about yourself, I am gay, I am a Christian, I am now Baha'i, those things become fundamental about yourself and the world can view you in a different way. And you may or may not project that to other people. He may not appear to be feminine, although he did say he enjoyed cross-dressing. He hasn't come out here. I mean, we have your motion with regard to his identity. It's no sign that he's planning to come out. He may have tendencies that will be recognized, but I still haven't seen why his condition, his risk of going back has changed at all. He has come out to other people here, but definitely not to his family because he still fears that his brother or cousins or other family members back in his home country would beat him or kill him if they suspected that he was gay. The testimony shows that even if someone made a joke saying that's so gay about something about him, he is completely paranoid and terrified of how others perceive him. He's paranoid. That's been true for quite a while, hasn't it? Yes, that's true. I would say that the changed circumstances also that he testified he didn't fully accept himself as gay until after he filed his application for asylum. The board erred in failing to consider Dr. Walz's testimony that it took 18 therapy sessions and over a year of therapy sessions, and even then he still had a deep-seated, internalized shame and homophobia. She testified that she had never seen someone so afraid of being found out that he's gay. The court, the board erred in failing to consider his testimony that he hoped to be able to overcome his sexual urges. Even though he's acted on them on occasion, he spent his whole life thinking that if he just doesn't act out on them, he won't be gay anymore. But only after therapy can he realize, in fact, he is gay and can't change that about himself. And when did that realization finally sink in for him? What point in time? That was during the therapy sessions. So after he filed the asylum application? Yes. He said on page, it's on 212. So how, but I don't understand, how can that be a changed, the change in circumstances is what motivates you finally to file. You're saying it didn't occur until after he had already filed, so there's no, how can there be a causal connection there? He was able to articulate to his attorney, you know, I've had sexual relations with men, I think I might be a homosexual, but it's different to be able to say, I accept this about myself and I can't move any further until, I can't move any further and get over hating myself so much until I accept that. And that needed to happen before he filed the asylum application, right? But he was in removal proceedings, so he didn't, I mean, he had to file an application for relief. That doesn't really help him from his timeliness point of view. His problem is that he took longer than a year. And what's wrong with the board's determination that, yep, he took longer than a year, his filing apparently had nothing to do with the change in circumstances when he finally filed, so it's hard to say that delay in filing is justified by his internal anguish. The board's decision is wrong because it didn't consider a testimony. Didn't consider or wasn't persuaded by. They addressed it in less than a sentence. Fine, but that's not the same as saying they didn't consider it. You have to demonstrate to us, I mean, unless they disregarded it, and they did not, they acknowledged its existence. And then I think we have to be persuaded that the evidence compelled that result. That's something different than saying the board didn't consider it. I'll reserve the rest of my time for that. Okay. You may. We'll hear from the government. May it please the Court, Nancy Cantor on behalf of the Attorney General. Your Honor, the government's position today is that substantial evidence supports both the agency's determination that Petitioner failed to demonstrate that his delay in filing his asylum application was reasonable and that Petitioner failed to demonstrate eligibility for withholding of removal. Just slow down. Absolutely. A little bit. It's hard to talk. Absolutely. With respect to the filing of the asylum application, the government's position today is Petitioner failed to show changed circumstances where. Okay. So you concede that a changed circumstances argument was exhausted before the BIA? The IJ, Your Honor, it's not entirely clear to me. The immigration judge did find that there was no changed circumstances, that Petitioner's revelation about his sexual identity orientation was not a changed circumstances. The board, it wasn't entirely clear to me which order Petitioner was, or which category changed circumstances or extraordinary circumstances Petitioner was raising the sexual identity issue under. But I'm happy to say that it meets neither. When it comes to changed circumstances, Petitioner had homosexual feelings when he was 12, had a homosexual experience when he was still. Well, we got the fact. Right. But let me just, let me give the best case for his position under changed circumstances. Sure, I had acted on a couple of isolated occasions in the past on my homosexual urges. But it wasn't until I finally accepted that, you know what, this is just who I am, and I'm going to now have to live my life in accordance with that kind of internal recognition. That's the point at which I knew if I went back, I was going to be at risk. Because if I had been successful in my understanding that I could fight this and that I could get over it and I could just live as a heterosexual, then I obviously wouldn't fear any persecution. And is it Jordan where he'd be returned? Yes. But it wasn't until I finally accepted that, you know what, I can't change myself, and I'm going to continue to act on these urges. And so it's at that point that really he has a recognized ground to file. That seems to me just like Taslimi, right, under changed circumstances. And if the point at which that recognition had set in was shortly before he filed the asylum application, I would say, boy, you should have went under Taslimi. So what's wrong with that? Well, I don't believe this case is like Taslimi. Under Taslimi, Taslimi was a different circumstance, one, because the alien did not convert until after she'd come to the United States. It was a brand-new conversion to Christianity. She wanted to be sure that she was a Christian and this was how she was going to live her life. I understand how you could think this case would be like Taslimi, but the facts are completely distinguishable. Petitioner has had homosexual urges since he was 12, and well before his student status expired even under the agency's interpretation, even under, you know, assuming September 2005, well before that day, Petitioner feared returning to Jordan because of his sexual identity. Moreover, he did not actually accept the fact that he was homosexual and had these sexual issues and, you know, accept himself as who he was until well after his asylum application was filed. And he only sought... I know counsel conceded that, but how do we know that from the record? Well, I don't actually think, I don't actually believe that that is the case. I'm not actually sure that that's the case. No, and that's why I was surprised to hear that answer. But if that's not true, if he had the, I would call it the conversion, the conversion equivalent shortly before he filed his application, right? If he had the conversion equivalent shortly before he filed his application, we would have a much tougher question, I believe, of whether or not the delay was reasonable. Well, what you just said, that in fact is what you understand the record to show. Well, not entirely, Your Honor. I believe that Petitioner, from what I can tell based on the transcripts and the testimony from the doctors and the psychologists, is that Petitioner has a lot of inner turmoil. I'm not entirely sure that he has actually accepted himself as who he is and is, you know, going to live a life as a homosexual happily out and, you know, accepting of himself. But even assuming that he was now, that post-states the filing of the asylum application. The asylum application was filed December 2006, and he only began seeing a psychiatrist conducting these interviews and treatments after the application had been filed. So there's no, the reasonable delay here is the period, the period in question here is the 15-month period between September 2005 and December 2006. That's just not right. If you were analyzing it as an extraordinary circumstances case, I would agree. I agree with you. But as a changed circumstances case, that's just flatly wrong. Taslimi, Ms. Taslimi was here for 10 years illingly before she had the conversion, and we just measured the reasonableness of the delay from the point of conversion forward. And I would say the same thing here. If, in fact, he had this conversion equivalent shortly before he filed the application, we would just measure that small interval. It has nothing to do with the 15 months. The problem here, Your Honor, is that Taslimi, I'm trying to think. I had it on my thought, and it just succeeded me. In Taslimi, the alien was here for a very long time before she began the conversion process. Completely with no status. Completely with no status. That's absolutely correct. But our alien, it's distinguishable because the petitioner in this case, it had been an ongoing issue. Moreover, the board in its decision notes that there was no actual, or at least it was not persuaded by the medical evidence that petitioner's issues with his sexual identity, which go back to when he was 12 to, you know, say the date he filed his asylum application, actually incapacitated him such that he could not have filed an asylum application. He might have been hoping that he could cure himself of being a homosexual or stop being one or change who he was, but the fact remains that he has always feared returning to Jordan because he had these sexual identity issues. That fact has not changed, and that arose well before he filed his asylum application. In Taslimi, she became a Christian, and that was the triggering fact that made her fear returning to her home country. She was out of status for 10-some years, but when she became a Christian and developed the fear of returning to her home country, she filed within, I believe, seven months of that date. So the question was, was seven months reasonable? Here, it's not the conversion. There is no converting revelation, revelationary event in terms of the fear of returning to your country, and that, I believe, is what... Why isn't he entitled to say, look, yeah, I acted on these urges before, but I didn't think, I don't know, I was in denial. I did not think that that was going to be how I would conduct myself going forward. I had always assumed that I would eventually come around to, and I'd see the light and I could live my life as a heterosexual. It wasn't until, you know, let's say November of 2006 that I finally, you know, just resigned myself to accepting that, no, this is just who I am. And that, you know, before that point, I can't say that I had a legitimate fear of going back because I assumed that I was going to be able to live my life as a heterosexual and not risk any persecution. Well, he's never actually presented that argument. I mean, that would be the end of the day. He has never presented that argument. He concedes that he has been afraid of returning to Jordan for years, well before his status expired. And that, Your Honor, is what distinguishes this case critically from Taslimi in which the alien's fear of returning to her home country was triggered by the conversion, not by any other subsequent revelation, but it was the conversion to Christianity that triggered her fear of returning to her country. The alien, the petitioner in this case, concedes that he has had sexual orientation, homosexual issues since well before he even entered this country and that he has feared returning to Jordan for a very long time. That he may now realize he can't change himself doesn't change the fact that his fear arose much earlier and that he waited well over a year following expiration of his status until he filed his asylum application. And that, Your Honor, is what distinguishes this case from Taslimi and any other case in which an alien actually has a change which triggers the fear of returning to their home country. Unless the Court has any further questions, the government is happy to rest on the briefs and the arguments presented today. Thank you. Thank you. Thank you. Rebuttal. Thank you. To go back to the parallels to Taslimi, in Taslimi she attended church for at least several months before she was baptized and the Court recognized that the date of the baptism was the date of conversion and that after the baptism there was an ongoing, continuing process of deciding whether she was a Christian. In this case, the parallel is that he did have brief one-night stands with men throughout his life, but he also testified that he had sexual relations with women on a number of occasions throughout his life. And so he did not fully accept himself as a homosexual until the point at which he filed the asylum application. Is there evidence in the record in your – are you taking the position there's evidence in the record that he would come out if he were sent back to Jordan? I think it's our position that it would be something that's known, that it would be discoverable, that just as someone who is Christian might not wear a cross,  but could still be internally recognized as a Christian. You know, I just don't think that anybody in Jordan would. As it was before he left, I guess. Right. But that, you know, having some self-acceptance would, you know, have other people to perceive him differently. I would also point out the government's brief and also the Board of Immigration Appeals' decision misstates Dr. Al-Fadl's testimony regarding the gay Jordanian member of the royal family who was beaten. He was – Dr. Al-Fadl did not testify that he was singled out because he was a member of the royal family, but rather because his family was a militant conservative Muslim family, just as Mr. Cutcut's family is. And so Dr. Al-Fadl testified that given Mr. Cutcut's family's interpretation of Islam, he would face a high likelihood of being beaten or turned over to the police, and therefore that rises to the level of meeting his standard for withholding of removal. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted. The next case on this morning's calendar is United States v. Russia.
judges: Schroeder, Clifton, Watford